# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-23-RJC-DCK

| | |
|---|---|
| **MOVEMENT MORTGAGE, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **JARED WARD; JUAN CARLOS KELLEY;** ) | |
| **JASON STEGNER; and NEW PENN** ) | |
| **FINANCIAL, LLC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** comes before this Court on Plaintiff Movement Mortgage, LLC's (Movement) Motion for Preliminary Injunction (Doc. 4), which was filed on January 23, 2014. On February 5, 2014, the Court issued a Temporary Restraining Order (TRO) against Defendants Ward, Kelley, Stegner and New Penn Financial (New Penn), enjoining various actions for fourteen (14) days. (Doc. 13). On February 7, 2014, Defendants moved, collectively, to dissolve the TRO and to oppose the preliminary injunction. (Docs. 22, 23). Plaintiff responded on February 18, 2014 and Defendants replied the same day. (Docs. 28, 29).

On February 19, 2014, the Court conducted a hearing on the respective motions at which it extended the existing order for an additional fourteen (14) days. The issues in the aforementioned motions are ripe for adjudication.

I.      **BACKGROUND**

The facts of this case have been outlined in the order issued by this Court on February 5, 2014. (Doc. 13). They are incorporated here and need not be revisited in detail. (See Id.).

## II. DISCUSSION

### A. Relevant Agreements

New Penn is a corporate entity and Plaintiff has not alleged any existing agreement whereby New Penn agreed to restrict its business activities. Here, the agreements at issue are between the individual Defendants, now employees of New Penn, and Movement, their former employer. The agreements for the individual Defendants, in relevant parts, are summarized as follows:

**Jared Ward**: Signed February 29, 2012. (Doc. 11-2 at 3). The agreement contains three provisions relevant here: (1) restricting soliciting, inducing, or advising Movement employees to terminate employment with Movement for work with a competitor for **12 months**; (2) restricting inducements of any customer, referral source, or party with an agreement with Movement to cease doing business with Movement for **12 months**; and, (3) restricting the solicitation of business from any customer, referral source or party with an agreement with Movement for purchase of any products that competes directly with those offered by Movement for **12 months**. (Id. at 2). Ward left Movement on December 12, 2013, which directs that these terms expire on December 13, 2014.

**Juan Carlos Kelley**: Signed October 15, 2013. (Doc. 11-3 at 8). This agreement contains three provisions relevant here: (1) restricting soliciting, inducing, or advising Movement employees to terminate employment with Movement for work with a competitor for **12 months**; (2) restricting inducements of any customer, referral source, or party with agreement with Movement to cease doing business with Movement for **12 months**; and, (3) contacting any Company Realtor Source to direct business to the new employer for a period of **3 months**. (Id.

2

at 5). Kelley left Movement on December 8, 2013. The first two provisions are set to expire on December 8, 2014, while the third provision expires on March 8, 2014.

**Jason Stegner**: Signed August 6, 2012. (Doc. 11-4 at 3). This agreement contains two relevant provisions: (1) restricting soliciting, inducing, inducing or advising Movement employees to terminate employment with Movement for work with a competitor for **12 months**; and, (2) restricting the solicitation of business from any customer, referral source or party with an agreement with Movement for purchase of any products that compete directly with those offered by Movement for **12 months**. (Id. at 2). Stegner left Movement on June 7, 2013 and the provisions are set to expire on June 7, 2014. Additionally, Defendant has established and Plaintiff has conceded that Defendant Stegner is employed by New Penn in a purely operational capacity with work duties that do not involve communications with referral sources or customers.

B.  <u>Elements</u>

A preliminary injunction is an "extraordinary and drastic remedy" never awarded as a matter of right. <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008) (citations omitted). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." <u>Amoco Production Co. v. Gambell</u>, 480 U.S. 531, 542 (2008). An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course. <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."). A preliminary injunction is to be granted only if no adequate remedy at law exists, and the moving party clearly establishes the requisite entitlement. <u>See Federal Leasing,</u>

Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (1981).

A plaintiff seeking a preliminary injunction must establish four elements, including that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in absence of preliminary relief; (3) the balance of equities tips in its favor; and, (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

Plaintiffs seek only injunctive relief and have not sought any claims for damages. The Court finds that Plaintiff has established that it would be likely to succeed on the merits on the question of solicitation of Movement's employees and referral sources. Specifically, the Court finds the temporal proximity between the communications between individual Defendants and the transfer of employment from Movement to New Penn strongly suggests the violation of agreements signed by the Defendants. In such agreements the Defendants promised, individually, to forbear from soliciting, inducing or otherwise advising any Movement employee of terminating employment with that firm. Additionally, Plaintiff has furnished evidence to establish that some of the individual Defendants had communications with referral sources whose nature was to re-direct business from Movement to New Penn. Defendants have not provided sufficient evidence to dispute such charges at present. The Court considers the evidence submitted by Movement, albeit circumstantial, to suffice to establish likelihood of success on the merits.

The analysis for irreparable harm remains unchanged from the Court's analysis in the TRO, which is cited and incorporated here:

> Plaintiff has likewise made a clear showing of irreparable harm including: the permanent loss of several employees; the loss of several key referral sources; lost revenue, and diminished future business. Additionally, Plaintiff contends that monetary damages do not provide appropriate redress as it is difficult to calculate

4

> revenue declines associated with the loss of employees, referral sources, and goodwill. Indeed, the revenue most affected is that which is singularly incapable of precise calculation: the loss of potential future business. For the limited purposes of [this] order, this showing is sufficient to establish irreparable harm.

(Doc. 13 at 4).

As is often the case, the balance of equities presents the most considerable questions for the Court, especially as any injunction risks foreclosing legitimate business activities of the individual defendants. Plaintiffs have provided evidence to demonstrate that Defendant Ward met with two referral sources in various locations in the United States, activity arguably prohibited under the restrictive covenant. Here, in order to mitigate the prospect of harm to Defendants, the Court requires the specific identity of currently existing agreements that it seeks to protect from interference. Any injunctive relief set out by this order extends no further than to protect existing service agreements and is not intended to act prospectively to foreclose legitimate business activity not affecting such agreements.

Finally, the public has an interest in seeing that agreements are enforced. <u>UBS Painewebber, Inc. v. Aiken</u>, 197 F.Supp.2d 436, 448 (W.D.N.C. 2002). Defendants maintain, incorrectly, that no choice of law provision governs the agreements and therefore they should not be enforced due to public policy considerations. In fact, each agreement expressly provides that North Carolina law governs its terms. Where the parties to a contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will give effect to that provision. <u>Tanglewood Land Co., Inc. v Byrd</u>, 261 S.E.2d 655, 656 (N.C. 1980). North Carolina recognizes the validity of restrictive covenants provided they are limited in duration and scope. See <u>Manpower of Guilford County, Inc. v. Hedgecock</u>, 257 S.E.2d 109, 114 (N.C. Ct. App. 1979). However, when the language of a non-compete

5

agreement is overly broad, "North Carolina's 'blue pencil' rule severely limits what the court may do to alter the covenant. A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant." Hartman v. W.H. Odell and Assoc's, Inc., 450 S.E.2d 912, 920 (N.C. Ct. App. 1994). Here, the Court finds the provisions, although broad in scope and duration, to be not so broad as to be unenforceable.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's Motion for a Preliminary Injunction (Doc. No. 4) is **GRANTED in part and DENIED in part**.

2. No injunction will be issued against Defendant New Penn Financial as they are not a party to any agreement with Plaintiff limiting their actions. Accordingly, Plaintiff's motion for a preliminary injunction is **DENIED** as to New Penn Financial.

3. Defendants Ward, Kelley, and Stegner are **ENJOINED** from soliciting, inducing or advising Movement employees to leave Movement.

    a. Defendant Ward is enjoined from such activity until December 12, 2014.

    b. Defendant Kelley is enjoined from such activity until December 8, 2014.

    c. Defendant Stegner is enjoined from such activity until June 7, 2013.

4. Plaintiff's motion to enjoin Defendants Stegner from soliciting referral sources or customers is hereby **DENIED**.

5. Plaintiff's motion to enjoin Defendant Kelley from communications with referral sources for the purpose of selling a product that competes with Movement is **DENIED as moot** as the expiration for the underlying agreement is imminent.

6. The temporary restraining order enjoining Defendant Ward from communications with referral source, customers, and parties who have express business agreements with Movement is **extended for fourteen (14 days).** Plaintiff shall furnish to the Court within seven (7) days a list of all such individual referral sources and relevant agreements against whom Defendant Ward shall be enjoined from improper communications. Furthermore, where the business entity with whom Plaintiff has an agreement contains other divisions, departments, offices or branches that are not bound by such agreement, the entity shall be identified solely as to the office or entity with whom Plaintiff has such agreement. No other division, inferior or superior shall be considered as included in the injunction. Defendant Ward shall have seven (7) days to furnish the Court any objections to the list. A failure by Plaintiff to furnish the Court with such list with seven days will result in the expiration of the existing order and denial of any injunctive relief.

7. The temporary restraining order enjoining Defendant Kelley with communications with referral sources, customers and other parties who have a business agreement with Movement is **extended for fourteen (14) days**. Plaintiff shall furnish to the Court within seven (7) days a list of all such individual referral sources and relevant agreements against whom Defendant Kelley shall be

enjoined from improper communications. Furthermore, where the business entity with whom Plaintiff has an agreement contains other divisions, departments, offices or branches that are not bound by such agreement, the entity shall be identified solely as to the office or entity with whom Plaintiff has such agreement. No other division, inferior or superior shall be considered as included in the injunction. Defendant Kelley shall have seven (7) days to furnish the Court any objections to the list. A failure by Plaintiff to furnish the Court with such list with seven days will result in the expiration of the existing order and denial of any injunctive relief.

_____
Robert J. Conrad, Jr.
United States District Judge